[Cite as *Miller v. Miller*, 2020-Ohio-6914.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| REGINA R. MILLER, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2019-T-0048** |
| ALFRED J. MILLER, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Domestic Relations Division, Case No. 2016 DR 00313.

Judgment: Affirmed in part, reversed in part and remanded.

*Ronald E. Knickerbocker,* 725 Boardman-Canfield Road, Unit M-3, P.O. Box 3202, Youngstown, Ohio 44313 (For Plaintiff-Appellant).

*Carol A. Sopkovich,* and *James J. Crisan*, Martin F. White Co., LPA, 156 Park Avenue, N.E., P.O. Box 1150, Warren, Ohio 44482 (For Defendant-Appellee).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Regina R. Miller, appeals the trial court's June 27, 2019 decision overruling her motion to have appellee, Alfred J. Miller, held in contempt of court. We affirm in part, reverse in part, and remand.

{¶2} Regina and Alfred were married in 2002 and had three children. They were divorced in March 2018 pursuant to an agreed divorce decree, and Alfred was to pay child support.

{¶3} In October of 2018, Regina moved to hold Alfred in contempt of court for his late child support payments and the failure to pay an electric bill. The magistrate overruled her motion on both grounds. It found Alfred was not in contempt because his child support payments were current at the time of the hearing and that Alfred was not in contempt for failing to pay the electric bill because the parties did not incorporate their electric bill agreement into the final decree.

{¶4} The trial court overruled Regina's objections to the magistrate's decision. She appeals that decision and raises three assigned errors:

{¶5} "[1.] The trial court erred in failing to sustain the plaintiff's objection, and overrule the magistrate's decision which failed to find the defendant/appellee in contempt where the evidence showed that the defendant failed to pay his child support as ordered by the trial court in the decree of divorce, and where, as here, the evidence showed, through the records of the Trumbull County Child Support Enforcement Agency (T.D. 20, Exhibit B), that the defendant failed to pay his child support payment for the Month of April 2018 (the month immediately following the entry of the decree of divorce) and that said arrearage continued for eight months until December of 2018 after the plaintiff had filed the within motion to show cause, and where the evidence established and the defendant admitted during the contempt hearing that he further failed to pay his child support obligation in a timely manner during the month of November, 2018, this being contrary to the magistrate's decision which stated that, 'Defendant missed (1) payment in 2018 ....' The defendant actually missed (2) payments in 2018 and left the plaintiff without her lawful child support for several months.

{¶6} "[2.] The Trial Court erred in not sustaining the plaintiff/appellant's objections to the magistrate's summary judgment for the defendant/appellee on the plaintiff/appellant's contempt allegation against the defendant/appellee that the defendant failed to pay the electric bill from the marital residence pursuant to the temporary order of the trial court and the divorce decree, where, as here, the magistrate failed and refused to allow any evidence on the issue of whether the defendant/appellee was obligated to pay the electric bill through March 31, 2018, in spite of the fact that the Judgment Entry/Decree of Divorce (drafted by the defendant's counsel) (T.D. 20) specifically provided that the defendant would be responsible for the electric bill at the marital residence until April 1, 2018, after which time the charges would be the transferred to the responsibility of the plaintiff, and, further, where, as here, during the final hearing (T.D. 47, Transcript of Hearing) in this matter the electric bill for and up to the end of March 2018 was specifically discussed on the record with counsel and the court and the defendant specifically stated under oath that he would pay the electric bill through the end of March 2018, and defendant/appellant's counsel went on the record and clarified that the defendant would pay the said electric bill up until April 1, 2018, after which the plaintiff would assume responsibility for said bill.

{¶7} "[3.] The trial court erred in failing to sustain the plaintiff's objections to the magistrate's decision denying the plaintiff/appellant attorney fees for the defendant/appellee's contempt of court for failure to abide by the trial court's prior orders, or to allow any evidence on this issue, or to grant costs and an award of litigation expenses pursuant to R.C. 3105.21(C) and 3105.73 (B) & (C)."

{¶8} "Contempt is a disregard of, or disobedience to, the orders or commands of judicial authority. *State v. Flinn* (1982), 7 Ohio App.3d 294, 7 OBR 377, 455 N.E.2d 691. Indirect contempt may include the disobedience of, or resistance to, a lawful order, judgment, or command of a court officer. See R.C. 2705.02." (Footnote omitted). *Dozer v. Dozer*, 88 Ohio App.3d 296, 302, 623 N.E.2d 1272 (4th Dist.1993).

{¶9} "Proof of purposeful, willing or intentional violation of a court order is not a prerequisite to a finding of contempt." *Pugh v. Pugh*, 15 Ohio St.3d 136, 472 N.E.2d 1085 (1984), paragraph one of the syllabus; *Cain v. Cain*, 11th Dist. Portage No. 2017-P-0084, 2019-Ohio-184, ¶ 17.

{¶10} We review contempt proceedings for an abuse of discretion. *State ex rel. Cincinnati Enquirer v. Hunter,* 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 29; *Marden v. Marden,* 108 Ohio App. 568, 570, 671 N.E.2d 331 (12th Dis.1996); *Haun v. Haun*, 11th Dist. Portage No. 2018-P-0108, 2019-Ohio-5408.

{¶11} "'[T]he term abuse of discretion' is one of art, connoting judgment exercised by a court, which does not comport with reason or the record.' *State v. Underwood,* 11th Dist. No. 2008-L-113, 2009-Ohio-2089, 2009 WL 1177050, ¶ 30, citing *State v. Ferranto,* 112 Ohio St. 667, 676-678, 148 N.E. 362 (1925). * * * [A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.' *State v. Beechler,* 2d Dist. No. 09-CA-54, 2010-Ohio-1900, 2010 WL 1731784, ¶ 62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been

confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.' *Id.* at ¶ 67." *Ivancic v. Enos*, 2012-Ohio-3639, 978 N.E.2d 927, ¶ 70 (11th Dist.).

{¶12} The party moving to hold another in civil contempt of court has the burden to show by clear and convincing evidence the existence of a valid court order and the other's noncompliance. *Carroll v. Detty*, 113 Ohio App.3d 708, 711, 681 N.E.2d 1383 (4th Dist.1996). Clear and convincing evidence is evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 331, 708 N.E.2d 193 (1999), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶13} Regina's first assignment argues the trial court erred in failing to find Alfred in contempt based on his failure to pay child support. She claims a contempt finding was required even if Alfred's payments were current as of the date of the hearing since he was not in compliance with the court's order when she filed her motion.

{¶14} The child support order in the parties' March 29, 2018 shared parenting plan that was approved by the court and incorporated in the final divorce decree states in pertinent part: "Obligor/Father shall continue to pay child support * * * in the amount of $1,070.00 per month plus a 2% processing fee for a total of $1,091.40 per month as child support for the three minor children * * *."

{¶15} At the hearing, Regina argued that Alfred was behind on his support obligation and that he should be held in contempt since Regina is heavily reliant on the support and that Alfred is obligated pay on time and consistent with the court order. She testified that Alfred did not pay child support in April or November of 2018, but

acknowledges he paid and that his support payments were current in December of 2018 and at the time of the hearing in April of 2019.

{¶16} Alfred testified at the hearing that he had moved in September or November, and as a result he did not realize he was late. He explained that he did not pay because he did not receive the child support statement due to his move. He acknowledged he did not pay in November of 2018 but said he made two payments in December to bring it current. But he said he paid support in April 2018.

{¶17} Contrary to Alfred's testimony, however, the October 15, 2018 Child Support Enforcement payment history report, attached to Regina's motion, indicates that there was no child support payment in April of 2018 and that his support obligation remained unpaid in October when Regina filed her motion.

{¶18} Alfred also argued that the court had to give him an opportunity to purge the contempt, which he had done, and as such, the contempt motion should be overruled. The court agreed, and at the hearing the magistrate said, "I don't see technically how, since he is current right now, how I can make a finding of contempt because he's already purged his contempt. * * * Any contempt that he may have had, he has already purged."

{¶19} As Alfred argues, sanctions for civil contempt must generally allow the party in contempt an opportunity to purge the contempt, and a court must permit reasonable purge conditions. *Carroll v. Detty,* 113 Ohio App.3d 708, 712, 681 N.E.2d 1383 (4th Dist.1996); *Burchett v. Miller,* 123 Ohio App.3d 550, 552, 704 N.E.2d 636 (6th Dist.1997); *Raleigh v. Hardy*, 5th Dist. Licking No. 08 CA 0140, 2009-Ohio-4829, ¶ 47. However, purging of contempt occurs *after* a finding of contempt, not before. *Liming v. Damos*, 133

6

Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 16 ("A purge hearing is * * * a conclusion of the originating contempt hearing because its purpose is to determine whether the contemnor has satisfied the purge conditions."); *Kolano v. Vega*, 2016-Ohio-356, 58 N.E.3d 546, ¶ 28-29 (5th Dist.) (arguments regarding inability to pay support must be raised at the contempt hearing, not the purge hearing, which is limited to whether the contemnor complied with purge conditions).

{¶20} Here, the trial court overruled Regina's motion because Alfred had already paid in full at the time of the hearing. The magistrate found he could not make a contempt finding under these facts. We disagree. The fact that Alfred's payments were current when the issue was before the court at the hearing months later is not determinative. His payment of past due support before the contempt hearing made him current on his support, but it does not preclude a contempt finding. Thus, the trial court erred by concluding it could not find Alfred in contempt because his support was current at the time of hearing.

{¶21} Regina's first assigned error has merit. On remand, the trial court shall determine whether Alfred was in contempt of court for failing to timely pay his monthly child support obligations in April and November of 2018, consistent with the final judgment entry of divorce and shared parenting plan. We address Regina's argument relative to attorney fees and costs under her third assigned error.

{¶22} In her second assignment, Regina contends the court erred in not finding Alfred in contempt for his failure to pay the electric bill for the marital home consistent with the parties' on-the-record agreement.

{¶23} As she argues, Alfred and his attorney agreed at the March 29, 2018 hearing that he would pay the electric bill for the marital home. Regina's attorney asked the following:

{¶24} "Q. Mr. Miller, back in January of 2017, you were order[ed] to pay the electric bill as of February 2017, is that correct?

{¶25} "A. Yes.

{¶26} "* * *

{¶27} "Q. And have you paid the electric bill? * * * Did you make a payment in March?

{¶28} "A. No.

{¶29} "Q. Do you understand you are going to make that, correct?

{¶30} "A. Yes."

{¶31} In response to this line of questioning, Alfred's attorney agreed that he would pay, stating: "We acknowledge we owe any charges incurred from 9-20-17 on the electric bill through April 1st, 2018." Regina's attorney then said that this acknowledgment resolved the issue. And the court immediately thereafter adopted the parties' agreed final divorce decree, noting that the decree addresses all issues.

{¶32} Yet, the parties' agreed final divorce decree does not include or reference Alfred's promise to pay the electric bill.

{¶33} The final decree states in part that Regina "shall be solely responsible for all expenses associated with the real estate including * * * repairs and utilities. Wife shall take whatever steps necessary to transfer all utilities for the marital residence into her name effective as of the date of the signing of this separation agreement. Husband shall

8

cooperate in executing any documents necessary to transfer the utilities effective April 1, 2018."

{¶34} Moreover, the final decree states: "[a]ll temporary orders issued by this Court are extinguished. The parties agree there is no arrearage in payment of any temporary orders."

{¶35} Based on the language in the parties' agreed divorce decree, the trial court held: "The Defendant did not fail to pay the electric bill at the marital residence. Per the Agreed Judgment Entry/Decree of Divorce field March 29, 2018:

{¶36} "'*All temporary orders issued by this Court are hereby extinguished. The parties agree there is no arrearage in payment of any temporary Orders.*'"

{¶37} The final divorce decree also states that it supersedes all other agreements.

{¶38} We agree with the trial court's conclusion and its decision not to hold Alfred in contempt for his failure to pay the electric bill. "A party can only be held in contempt of court for failing to comply with the language the court employed in the four corners of [an] applicable court order." *Haun v. Haun*, 11th Dist. Portage No. 2018-P-0108, 2019-Ohio-5408, ¶ 62, citing *Cain v. Cain*, 11th Dist. Portage No. 2017-P-0084, 2019-Ohio-184, ¶ 21.

{¶39} Thus, the final divorce decree controls, not what the parties agreed to at the hearing because a court speaks through its judgment entries entered in the record. *Logue v. Fregiato,* 132 Ohio App.3d 541, 544, 725 N.E.2d 717 (7th Dist.1999), citing *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 163, 656 N.E.2d 1288 (1995).

{¶40} Here, the divorce decree unambiguously states that there is no arrearage for temporary orders, and it does not reference Alfred's agreement to pay the electric bill.

Further, Regina does not identify any other judgment incorporating his promise to pay. Consequently, the trial court could not have found Alfred in contempt of court for his failure to pay the electric bill because there was no court order requiring him to do so.

{¶41} Thus, Regina's second assigned error lacks merit. As the magistrate suggests, Regina may have a remedy under Civ.R. 60(B). *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976).

{¶42} Regina's third assigned error contends the trial court erred in failing to award her attorney fees, court costs, and litigation expenses pursuant to R.C. 3105.21(C) and 3105.73(B) based on Alfred's contempt. We agree in part.

{¶43} Because we find no error in the court's decision not to hold Alfred in contempt for his failure to pay the electric bill, Regina's argument based on R.C. 3105.73(B) lacks merit.

{¶44} However, R.C. 3105.21(C), *Custody and support of children; support orders,* states in part: "If any person required to pay child support under an order made under this section * * *, is found in contempt of court for failure to make support payments under the order, the court that makes the finding, in addition to any other penalty or remedy imposed, *shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt.*" (Emphasis added.)

{¶45} As stated in Regina's first assignment, the trial court erred in finding that it was precluded from holding Alfred in contempt of court because he had paid in full at the time of the hearing months later. Upon reassessing whether Alfred was in contempt, if

10

the court finds him in contempt, it shall assess court costs and reasonable attorney's fees under R.C. 3105.21(C).

{¶46} The trial court's decision is affirmed in part, reversed in part, and remanded.

{¶47} On remand, the trial court shall determine whether Alfred was in contempt of court for failing to timely pay his monthly child support obligations in April and November of 2018, and if it finds him in contempt, it shall assess court costs and order payment of Regina's reasonable attorney fees associated with the contempt proceedings stemming from his failure to pay support pursuant to R.C. 3105.21(C) and may award other sanctions within its discretion. R.C. 2705.05(A).


TIMOTHY P. CANNON, P.J., concurs,

CYNTHIA WESTCOTT RICE, J., dissents.